Case number 24-3005 United States of America at balance versus Roberto Adams Mr. Hobel for the balance, Mr. Kramer for the appellate. Good morning, your honors. May it please the court, Mark Hobel for the United States. I'd ask to reserve two minutes for rebuttal please. Defendant Roberto Adams failed to carry his burden on plain error review to show that the inadvertent omission of the Carter prophylactic instruction actually prejudiced him and affected his substantial rights. The district court erred in concluding otherwise. Based on matter that it was inadvertent, does it? On on plain error? No, but it was inadvertent, but the district court in order to correct that error watered down the plain error prejudice standard and relied on the speculative possibility that the jury might have might have held the defendant's silence against him. How are they ever gonna know actually? Everything has to be speculation. There's no way to know what the jury actually would have done in any case. It involves balance, either evidentiary, evidentiary information or evidentiary. Correct? Right. And on plane on plain error review, that uncertainty weighs against the defendant. You can never have plain error review when you have to just try to figure out how the jury would have resolved something in a counterfactual world. Certainly not. We've acknowledged that fact. This prong requires some speculation. You aren't gonna have hard the rare case. You have hard evidence as to what the jury was thinking and how it would have affected them. Right. And the Noir case I made Miss Brown said, but the Noir case in which this court has acknowledged that the reasonable property inquiry is inherently speculative. I believe that's the language that Adams quoted. Um, that case involved a much firmer factual foundation that the court had here. In that case, the defense attorney essentially, uh, threw away the only possible duress defense to conviction there by failing to call an expert. That was an effective assistance case. But the court at least had something to point to rather than the sort of inherently speculative didn't just go. I don't know what happened. Maybe they could have. The district court went through a lot of concrete things about this crazy, a lot of concrete, factual information, a lot of observations that he had a front row seat to. He didn't just sort of say, Well, maybe I mean, I don't understand the speculation argument. Acknowledged that we don't know we're looking into a black hole here. And so we look at the whole of the district court's opinion, which is very specific and very concrete about the concerns about, you know, the weaknesses in the evidence or what a close call it could have been on the knowledge question had a reason for why, um, this could have impacted the deliberations on the second two counts, given the nature of the end, given the closeness of the evidence. And so that's not raw speculation. That seems to be exactly the type of, um, analysis that we've said. It's the nature. It's just the nature of the beast in this area. Well, the fact that the district court cited to the record does not insulate its reasoning error. I didn't say just has decided to the record. There were specific reasoning given here, and it seemed like if we assume it's reasonable, if we conclude that it's reasonable, um, that it reflects the expert view that the district court judge had, um, and that the analysis of how in this case, with its twists and turns on the different nature of the 1st and 2nd applications could have made the differentiation followed up exactly on the differentiation the jury made, right? And what was in that context, right? What we submit is the possibility that it could have made a difference under the Supreme Court's building in the United States v Marcus. A possibility of prejudice is not enough for a defendant to carry his burden on plain error review. That's the fundamental distinction between plain error and harmless air. And as we pointed on our brief, the district court here applied a standard that was substantially more equivalent to substantial probability of an effect on the on the jury's verdict. That's prejudice. That's our words. That's the rules, right? And I again point the court to the actual reasoning of Page 29 of the transcript of its oral ruling, where it stated a reasonable jury could have acquitted adrenaline. It may have wondered a reasonable jury might have wanted to hear from the defendant. But that's the kind of speculation who said it's just gonna have to happen, right? That's he can't say he for the just are you complaining? The district court didn't say the jury would have or did. Is that the objection? I think that it relied on a residual possibility of prejudice in disregarded. What we acknowledge was damning evidence on the count of conviction. Even it acknowledged damning it was a split verdict. It was a split verdict, and it doesn't that tell you something about what you could read into that as well? In this case, it does. And the district court discounted that because it found that it was not unassailable evidence. But here the split verdict shows that the evidence was circumstantial. Now I know that in a jury charge, you would look to direct and circumstantial weighing evenly that they could account for both. But still, you know, when you look at circumstantial evidence plus a split verdict, how does that affect your decision? It's argument. It weighs in our favor, and here's why. Um, the split verdict is itself evidence that the jury considered the actual evidence in the case and drew a distinction between the two counts. The evidence on count two was absolutely stronger than the evidence on count one, where the jury acquitted the second loan fraud was the second time that Adams, um, hold the same fraud on the government. By that time, he had already spent the first loan proceeds on gambling on vacations, not on paychecks for his small business. He had already received multiple emails from directly from his loan processor that, um, set forth, um, uh, requirements for the second draw loan that he knew it could not meet. Um, we have the same problem that he didn't see the papers that were submitted to the government. He didn't sign the papers that were submitted to the government. And so again, for knowledge, you had the same sort of trouble of difficulty that you had for the first count. But then you have this additional evidence. But that's when the district court reason that, as I said, why didn't he explain himself? That could have factored into his decision, right? And by the time of the second, um, alone, uh, there was just a lot more evidence such that even the government in rebuttal said to the jury, even if you don't think that he even if you can't infer, you recognize that your first count was weaker, but that doesn't mean that your second and third counts were so strong that the district court abused his discretion and concluding that there was prejudice here and that the fourth prong, the integrity of the proceeding were both implicated. It's you have overwhelming evidence on the knowledge question. You just didn't have overwhelming evidence on the knowledge question. You know, I don't doesn't matter what I would think one way or the other on a jury district court analyze it. The district courts found that we had damning evidence. I'm not sure what the distinction between damning and overwhelming is. But from the district court's perspective, because it, um, effectively made the government disprove the possibility that the image that the jury held the defendant's silence against him, even though there was no comment here by anybody in this case, Adams is pointing to no comment by anybody in this case that could even indirectly be seen as a comment on his silence. And that's, you know, United States government. Absolutely. That's a cut to the credit of the prosecution. Absolutely right. But in United States V Monahan, this court noted that this is the type of case where there's no comment that even by the wildest stretch of the imagination could be seen as commenting on the defendant's silence, where this type of prophylactic instruction is likely to do the least good for the defendant. So you have damp verdict case. No, that was a case in involving the, um, but, uh, you know, Katala, a split verdict case, smallest split verdict case. Both of those cases, this court held this court found that the split verdict demonstrated a lack of prejudice. What would you say would be the least likely to do any good for the defendant to offer this kind of instruction when that is an instruction that is always given? And the district court recognized their error and not given it, particularly at the request of the defendant. Right? Well, it's not always given. It is at the request of the defendant. So it's not generally given. I mean, as a trial judge, you're going to put that in your own set of instructions even before defendant asked you. That's just one of the common instructions that would be part of any criminal process. Well, well, no, the, um, as we say in our brief, there are reasonable minds can differ on whether this instruction actually does good for the defendant. It's a prophylactic instruction. I do think they were asking for it from the beginning, from time and time again. They didn't obviously object at the at the end, but they asked time and again, and there's no doubt fell up and just child's question that it has to be in your instructions that well, if I could, that's not exactly the case you're on. So the initial request came in the joint pretrial statement before there was any indication before before the decision had been made that Adams was not going to testify. In fact, throughout the trial, if anything, it seemed more likely that he would testify at the very end when he determined that he would not testify and the court inadvertently omitted the instruction and even gave the parties multiple opportunities to review the instruction. The final instructions even told the party speak now or forever. Hold your peace. If you see any errors in it, the final instructions were 20 pages. Just 20 pages gave them an opportunity. You can see this in a transcript to review them at that point in time, and perhaps it was inadvertence. The defense, um, did not object. And even if it's inadvertent at that point, the best you can say is that when it really mattered when the rubber hit the road, the defense did not view that instruction is so important that they were scrutinizing the 20 page jury instructions, um, with time to see whether it was in there. So the government didn't notice either. That's right. But we're not. We're not a lot easier. One of the two you would have noticed, of course, but I'm playing error. The burden is on the defense to demonstrate more than, you know, neither side noticed. And again, I wasn't in the room. The district court was. The district court has a sense of the pace of the trial. What was going on in everybody's heads? What could have possibly led to this mistake? The district where I'm in three, three people here who didn't notice this error. So it's a little hard to say. I mean, obviously, it's first and foremost on on the defense, but right. The legal it is a legal question. So this court does apply to Novo review to the prejudice prong and plain error. And I note that although the district has case for that, uh, Ruchi that the reasonable probability of a outcome. Admittedly, that was Brady materiality, but it's substantially the same standard. It's a legal question that this court reviews to Novo and a district court, by definition of any cases from saw that often that it's the district court applying plain error in the first instance. Um, that's right. But that I mean, it's if it's the Novo, but surely we have to take into account in the district court's unique capacity to evaluate prejudice much from the live case much easier than we can from a cold record. So how would that factor into your de novo review standard? Well, I think I think, as your honor said, the district court just doesn't apply plain error that much who applies plain error frequently. This court nobody applies. But I think we're also quite clear that the district court has a front row seat, hasn't a capacity to to evaluate the impact of evidence. The course of the litigation, the course of the trial. If you were on the other side, you'd be arguing exactly this point. Um, and that that district court had the has the expert view, and that has that has to count for something in this analysis. You're saying that it plays no role whatsoever in our de novo review. Well, is I mean, that's sort of the nature of de novo review that it's a it's a fresh right. Um, it may be in a case in which there reality is a legal concept. And Brady, what we're asking here, though, is there's not a legal error here, a fundamental legal error. I know you've argued about burden proof and stuff, but really, we're just evaluating the district court's decision here, whether it's substantiated. And, you know, I don't know. There's many cases, if at all, where we reverse a district court just on the grounds that it misweighed the impact of a an instructional error on the jury in light of the evidence of the case in the case. I think that the this court generally reviews the prejudice requirements. Brady and Strickland are the more are the sort of more frequent examples in which this court takes a de novo review of whether there's a reasonable probability of a different outcome, which is the same standard that is applied to the district court's authority to correct an unpreserved error under Rule 52B. Who's better at evaluating what the implications of the split verdict were in this case? Us or the district court? I don't think that I think in this case, in which it's a largely documentary case, it's not that this is based on the credit the evaluation of the credibility of witnesses documents. They're all in front of in front of both courts and evaluating what possible inferences could could be raised by that by those. I don't think the district court, the district is not in a better position than this court. What is more, um, when it comes to playing air again, as your honor pointed out earlier position, the U. S. Government wants to commit itself to in cases going forward as well, where you're on the other side of the you're the appellee that the district court has no better capacity to evaluate the implication of the ebb and flow of the trial. Um, and the course of evidentiary submissions, the closeness of a jury verdict and how it may have worked itself out. That's the government's position. No deference whatsoever to the district court. I just want to make sure that's the U. S. Government's position with respectfully your honor. I think the question before the court is is narrower. No, you just made. You just made an argument about legal standard of de novo review that I understood and tell me if I'm wrong to be zero deference to the district court's front row seat and ability to evaluate the evidence and to understand the implications of error within the course of the trial because of that expert view. And you said no, it's just an over review. No deference to the district court. I'm trying to make sure that's the United States government's position. That's a legal position. That would not be just this case. That's going to be in every case going forward, even when the district court has come out on the top side of the district court's analysis. Is that the position of the U. S. Government? There's de novo review to the third prime. No deference whatsoever to the district court's ability to make judgments about the impact of error on the trial. I'm sorry if I'm not interviewed, but but but but we've we've taken a position here, your honor, which is that I'm trying to make sure I understand what that position is because you said we think it's de novo review. And I said, well, how does the district court's expert view factor in? Is your is your position? Yes or no? Zero deference to the district court's analysis and consideration of the evidence and the ebb and flow of the trial and up front front row seat to. I don't think that zero can. I don't think it's a binary, Your Honor. I think it's that's normally what de novo review is. And I right, that is what the role for the court's expertise. And I was hearing none. If there's a role, let me know. Right. I don't think it's I. It is a binary in the sense that de novo review means this court takes a fresh look at exercises independent judgment. The court, of course, can give the district court's views and its ruling as much weight as it deserves. And it may be in certain cases it may be entitled to a great deal of weight. But in this case, in which the court did painstakingly lay out its reasoning and its reasoning was flawed because it was based on the mere possibility of prejudice. The mere possibility that the, um, that the jury, uh, held and drew an inference based on the defense decision not to testify when there was no suggestion whatsoever made in this case that it should do so. Um, uh, this is not that case where the district court's reasoning is entitled to that type of weight. Um, and then go to, um, structural error versus us looking at this under rule 52 B. What? What position are you taking? Do you want us to go to the Carter analysis for a structural error? Or do we just go under 52 B and not need to reach that? Well, Carter errors is not structural, um, error. It's regular, um, constitutional trial error. I think the clearest the clearest indication of that is the fact that Griffin air under Griffin v California, which is can be a judge's direct comment, um, on in its instructions on a defendant's decision not to testify, um, is not structural error. That's Chapman v California. Um, so if, um, and the Carter instruction is is kind of a prophylactic instruction for Griffin's prophylactic instruction. So it just stands to reason and logic that Carter air is not structural. I'd note to that, as we addressed in our reply brief, uh, I can just point this point briefly. Um, rule 52 B applies to structural errors as well. But Carter error is not is not structural here. It's ordinary trial error. There's no need to reach that point. Um, so I see I'm well, I'm well out of time. I, um, uh, so we would ask this court to reverse the new trial. Thank you so much. We'll give you two minutes. Thank you. Mhm. Good morning, Your Honor's may have pleased the court. A. J. Kramer. Excuse me, A. J. Kramer on behalf of Mr Adams. Um, you're honest. The government has argued this case as if you're applying plain error to the situation. But the district court already did that. And all you're reviewing is for abusive discretion of that. And the government has not pointed out any abusive discretion on the district court. It's claimed that the district court applied the wrong standard is simply false. The last thing the district court said, one of the last things that district court said had the court given the instruction, there is a reasonable probability that the jury would have been less willing to take the inferential steps required to convict leaps and would have acquitted the defendant. That is exactly the correct test on, um, error like plain error like this on prejudice. The district court then went on on the fourth prong to say, um, the parties both requested the adverse instruction. The government says not quite correct that the defendant was requesting that again. That is simply false. The district court said that both parties requested the adverse instruction and the court agreed. The court and parties discussed the instruction after defense counsel advised the court that the defendant would not testify. And then the court accidentally omitted the instruction. It did not catch its error, and neither did the parties. The district court then previously, prior to that, reviewed in great detail the evidence in the case, the law and how to apply the facts to the law. Let me just in the Baptiste case, which I cited in length in the brief, the court talked about the importance of the district court having sat through the trial. This was a two week trial. The district court. But this court in Katala said the same thing. It paid 6 41 to 6 42. We owe deference to the district courts assessment of a statement's prejudicial impact on the jury. Judge Cooper was present for the entire trial and could see how the jury reacted to the remarks in Katala. The court went on to say we have to court. Do wait to the district courts on the ground judgment. And yet the government asks you to ignore the district court's judgment and asks you to ignore the statements in Katala. Um, as for I'm sorry, I'm sorry. Should the third prong of our as we review the district court's application of the third prong of plain error? Sure. Have you been de novo? Abuse of discretion? How does it? It should be. It's kind of like a materiality standard. On the other hand, we've talked about the district court's capacity, expert capacity to evaluate the evidence and the impact of error on the jury. And so I'm I'm not sure it feels like it needs to be some sort of hybrid de novo. I understand. And if there is, there is no case that stands for that. It should be be de novo review. If it's first of all, it's a discretion that I could either. So I'm trying to figure this out. I think, first of all, it's a rare case where the district court engaged in de novo review. That's that's one issue, I think. And that's why you rarely see the standard on for the third prong of being how you review the district court's decision. But a route a on which the government tends to solely rely, says something that's almost just the opposite. He said the question we're reviewing is not whether the district court properly exercises discretion, but whether the court properly found a Brady violation. So in a route, there was a legal issue. First, was there even a Brady violation? This case? Clearly, there was a violent constitutional violation by excuse me, failing to give the instruction. So that part of the case was out, whereas a route specifically said this distinction makes a bruit Brady ruling different from other new rulings. Because whether the government has breached its obligations under Brady is a question of law. That's a page 5 96 of a route check. And they had previously said, um, about the gone through what a Brady violation is. So they specifically distinguished a case where there's a Brady violation, the plain error from a written a new trial motion where there's it's a reviewed for abuse of discretion. Other than that, I don't think there's any authority for reviewing the third prong. If in the rare situation where the district court has already decided that for reviewing that de novo, it's a factual finding. The district court went through the record and as best it could again is then Judge Kavanaugh said in a no way. It's all somewhat of a speculative exercise. But the district court in this case went through the acts at great length, um, as in the Baptiste case and reviewed them with respect to how it affected the jury. And the, um, Supreme Court has been much more definitive about the instruction on a defendant's failure to testify. The government relied upon Griffin. But in, um, in the Carter versus Kentucky case in footnote 17, the court adopted the view that more harm may flow from the lack of guidance to the jury on the meaning of the Fifth Amendment privilege than from reasonable comment upon the exercise. In other words, they said a Carter or a Bruno or whatever you want to call it. No adverse inference instruction is worse than the common in Griffin versus California. It's more of a violation and more harmful to a defendant. So the Supreme Court in Carter took a took a view. Um, and again, that clearly it's not calls for almost speculation because what they said is the jury will speculate when the jury is left to roam at large with only its untutored instincts to guide it to draw from the defendant's silence, broad inferences of guilt. Um, and that's what Judge made ahead to deal with. And he very reasonably found that, um, that there was a reasonable probability that the jury would have acquitted. Um, with respect to the split verdict at that, even more so, I think, shows the judge. The district court was correct. Um, you can view a split verdict one of two ways. You can view it that, um, maybe with, um, that the jury did go through the evidence in particular. But the problem is, and especially when the Supreme Court has talked about the importance of this instruction, you can also view it in a much more direct way that the jury acquitted. The evidence was so weak on the first count that the jury acquitted Mr Adams. And yes, it was stronger on the second two counts. But if if that instruction have been given, as Judge made a found, there was a reasonable probability they would have acquitted on that, too. You case, Judge made a went through the evidence in great specificity to show why that there was a reasonable probability that the jury would have acquitted. So, um, what do we do in reviewing plain error, not harm lived error with the other instructions that were given to the jury, including, um, uh, that Adams did not have to prove his innocence at all or produce any evidence? I get that. It's not those other instructions. They're not a sufficient substitute up front. If a defendant asked for the instruction, so that's that's well settled. But in analyzing the plain error prong, um, prejudice prong or maybe even the fourth prong, the integrity of the proceedings. Do we look at all at what the other instructions covered? Well, the Supreme Court. I mean, I don't want to repeat what your honor just said. But the Supreme Court has been quite clear that, um, instruction on the presumption of innocence on the jury needs to follow the evidence. None of that is a substitute for this instruction. So there's error. There's error not to giving it. I'm stipulating that. But now in evaluating the consequences of that, I think Supreme Court was saying there. No, you got to do it. It will be error not to do it. You can't just say I did these other things. But given that we have error here, unfortunately, does that not temper the prejudice? No, because that what they said was that those instructions don't ameliorate the error in any respect. Um, that error is still there. It's not been ameliorated at all by the other instructions. They could not have been clearer, I think. Um, and they could not. Although the jury was instructed, it may be doubted that this instruction contributed in a significant way. I mean, they're quite clear about that doesn't make up for it. So I don't see how just because it's in plain error that the error is still the error is still just as plain, just as prejudicial, uh, according to the district court. And the fact the other instructions played no role in any kind of lessening of that prejudice. Um, so I don't see how the end. And by the way, the government could have rendered this whole thing moved by object. They had the exact same opportunity to point out to the district court that the instruction had been inadvertently admitted. And if they had done that, we wouldn't even be here arguing this. He would have either been this issue. He would have either been acquitted or convicted. Um, but this issue would not be before you if the government had just stood up and told the district court judge that the instruction had been omitted in the various translations of it going back and forth with the party. So, um, the the notion that Mr Adams lawyer played any role in this is just not correct. And it was, first of all, was never raised in the district court. It was raised in the first time on appeal as the government admits in its brief. And second of all, um, the district court found just the opposite. It was inadvertent on the on all parties. Um, I just record had found. I'm sorry. I take the district court did not find it here. But if the district court did think it was gamesmanship, but otherwise everything's the same. How would that factor and would go into the fourth prong? Then I think it would go to the fourth prong. It's not the it's not. I don't see how it would go to prejudice that perhaps a different, you know, a different result. And by the way, I think a different result is one juror. A hung jury is a different result than a convicting jury. But, um, as an aside, or I mean, as a direct argument, but, um, hadn't been mentioned. But, um, I think it would go to the integrity fairness if it certainly seems to me that it could have impacted the fairness prong if if the lawyer, um, purposely doesn't object. But, um, by the way, the Supreme Court addressed that scenario in Rosales Morales. Uh, 5 85 U. S. At 1 44 to 45. It said it is hard to imagine the defense counsel would deliberately forego objection now to a plain error that would subject her client to a higher guidelines range of its guidelines because council perceived some slightly expanded chance to argue for plain error. I mean, a is not going to sit there and let this instruction not be given when they've asked for it numerous times on the hope that on appeal that they'll prevail on, um, plain error that the instruction was not a much higher standard, whereas if they all they had to do was object to the district court and then the it would have been given just like if the government had pointed out to the district court, the instruction would have been given. So I think it would have if if there was games ship, which was not in this case and it was never raised in the district court and the defense lawyer was not given a chance to respond to any such claim. But if it was, I could see that the court as it did in the games case, uh, that it could be a different circuit. And I'm sorry. I don't remember which one, but that it could affect the whole fairness. The fourth prong. I could see that argument being made. I don't I'm not gonna argue it. I'm sorry. I'm not gonna argue it. But I do think the structural error argument is is proper. But I think the court can decide it on the much easier, um, round of affirming that the district court did not abuse its discretion. Thank you. Thank you very much. Mr Nobel will give you two minutes. Thank you. Thank you. So just to be brief and respond to a few points that Mr Kramer first, the standard is not a reasonable probability that one juror, um, would have hung the jury. There is standard from Greer of the United States. The Supreme Court case is a reasonable probability that the jury would have acquitted the defendant on plain air review. That's the standard. Um, with respect to, um, deference to the to the to the, um, district court here, Mr Kramer pointed out this was a two week trial. I'm not sure that was that was correct. It was essentially three or four days of testimony. Most of it documentary. This is not a lengthy case. I think he was referring to the case. He was quoting. I'm sorry. I think the two weeks was referring to another case. The one he was quoting at this case. Oh, I'm sorry if I was confused. But certainly this case was not was not two weeks. It was several several days of testimony. Um, with respect to, um, abusive discretion versus de novo review of plain air and how that cashes out. Ruchi is clear that, um, it may not make so much of a difference because a district court, um, abuses discretion by definition when it makes an error of law here at the district court, um, made an error of law by misapplying and in multiple ways. Um, the prejudice prong of plain air. Um, and so in this case, whether it's cashes out as it was quite explicit, that was fine. The reasonable probability standard it did. But as we've noted, that does not insulate its actual reasoning and multiple legal errors it made, such as, um, holding the government or holding, I guess the government to a higher burden because the air was constitutional in nature. That's a that's a hallmark of harmless air review, not a plain air, plain air review, ordinary plain air review for for constitutional areas. Can't factor in the constitutional magnitude of the error at all in its plain air analysis. That would go to prong for your honor that at that point, but even even, um, a prompt for a serious constitutional error doesn't axiomatically suggest that no one thinks the district court anything axiomatically here was really a all the relevant circumstances analysis, right? So I know your time's almost up. I didn't know if you had any quick thoughts on the structural error point. Are you resting on the brief as is the dependent? My understanding from Mr Kramer was he was not arguing that further, so I did not attend it. Okay, so we would ask this court to reverse the new trial grant. Thank you, your honors. Thank you so much. Council of faces.
judges: Millett; Childs; Ginsburg